UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:                                                    Case No. 17-00984-jtg

PATRIOT SOLAR GROUP, LLC,                                 Chapter 11

                    Debtor.                               Hon. John T. Gregg

_____/

**OPINION REGARDING MOTION FOR
RELIEF FROM AUTOMATIC STAY**

APPEARANCES:  Cody H. Knight, Esq., RAYMAN & KNIGHT, Kalamazoo, Michigan, for Patriot Solar Group, LLC; Julie Beth Teicher, Esq., ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C., Southfield, Michigan, for Vanguard Energy Partners, LLC; David E. Bevins, Esq., RHOADES McKEE P.C., Grand Rapids, Michigan, for Huntington National Bank; Elisabeth Von Eitzen, Esq., WARNER NORCROSS & JUDD, LLP, Grand Rapids, Michigan, for Shape Corporation.[1]

This matter comes before the court on a motion for relief from the automatic stay [Dkt. No. 48] (the "Motion") filed by Vanguard Energy Partners, LLC ("Vanguard").  In the Motion, Vanguard requests relief from the automatic stay to continue to arbitrate its claims and effectuate rights of setoff and/or recoupment against Patriot Solar Group, LLC (the "Debtor").  The Debtor, its prepetition secured lender, and one of its largest general unsecured creditors object to the Motion because enforcement of the arbitration provisions in various contracts between Vanguard and the Debtor would conflict with the underlying purposes of bankruptcy in this recently filed Chapter 11 case.  They further argue that because Vanguard's claims are disputed and unliquidated, Vanguard's request for setoff and/or recoupment is premature.  For the following reasons, the court shall deny the Motion.

---

[1]     The law firm of Erman, Teicher, Zucker & Freedman, P.C. appeared as local counsel for Vanguard after the Motion was filed and only shortly before the hearing.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) (motions for relief from automatic stay).

## BACKGROUND

The facts, at least as presented in the Motion and the objections thereto, are relatively straightforward. The Debtor supplies, delivers and mounts various components for customers in the solar power industry and employs seventeen full time employees. Prior to the petition date, Vanguard and four project owners entered into contracts whereby Vanguard agreed to construct solar electric generating systems, among other things, for the project owners. Vanguard, in turn, enlisted the Debtor to manufacture, construct and deliver ground mounted racking systems and related equipment for each of the four projects pursuant to four purchase orders (the "Purchase Orders"). Separately, the Debtor agreed to secure permits and unload and install equipment for Vanguard with respect to each of the four projects pursuant to four subcontractor agreements (the "Subcontractor Agreements").[2]

In each of the Subcontractor Agreements, Vanguard and the Debtor agreed to submit any claims arising thereunder to binding arbitration. The Subcontractor Agreements all state as follows with respect to arbitration:

> Contractor and Subcontractor . . . agree to submit all claims, disputes and controversies relating to this Agreement to binding arbitration in the State of New Jersey. All claims, disputes and controversies between the Parties

---

[2]     According to the Subcontractor Agreements, Vanguard and the Debtor may have entered into a third agreement for each of the four projects. The Subcontractor Agreements refer to a "Prime Contract." However, Vanguard did not address the "Prime Contracts" in its Motion or during the hearing on the Motion. The court is therefore uncertain whether the "Prime Contracts" constitute a third agreement in connection with each project, or whether they are simply another name for the Purchase Orders.

Similarly, Appendix A to the Subcontractor Agreements refers to a "Master Subcontractor Agreement." It is unclear whether the "Master Subcontractor Agreement" is the form upon which the Subcontractor Agreements are based, or whether the "Master Subcontractor Agreement" is a separate document establishing general terms and conditions that supplement the Subcontractor Agreements.

arising out of this Agreement shall be decided by final and binding arbitration in accordance with the construction industry arbitration rules of the American Arbitration Association. Notice of the demand for Arbitration shall be filed in writing with the other Party and with the American Arbitration Association. Each Party agrees to have any claim, dispute or controversy arising out of this Agreement decided by a neutral arbitrator and each Party gives up any rights to have any such dispute litigated in a court or by jury trial.

(Subcontractor Agr. at § 9.1.)

The relationship between Vanguard and the Debtor soured soon after the Subcontractor Agreements were executed and the Purchase Orders were accepted. According to Vanguard, the Debtor was unable to perform under all of the Subcontractor Agreements and Purchase Orders for a variety of reasons. Vanguard thus contends that as a result of the Debtor's breaches, it was forced to arrange for third parties to complete certain work under the Purchase Orders and the Subcontractor Agreements.

On February 14, 2017, Vanguard filed a demand for arbitration and a complaint against the Debtor with the American Arbitration Association. In its demand and complaint, Vanguard sought damages under the Purchase Orders and the Subcontractor Agreements in the aggregate amount of approximately $3.4 million. The American Arbitration Association thereafter scheduled an initial conference in the arbitration proceeding for March 7, 2017 in New Jersey.

On March 3, 2017, the Debtor commenced a civil action in the state court of Massachusetts for breach of contract against Vanguard and the surety bond issuer for the projects. Only three days later and one day before the initial conference in the arbitration proceeding, the Debtor filed a voluntary petition for relief under Chapter 11 in this court. The Debtor is currently acting as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.[3] In its schedules, the

---

[3]     The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq*. Specific sections of the Bankruptcy Code are identified as "section ___."

Debtor identified Vanguard as holding a disputed claim in the approximate amount of $3.9 million. As of the date of the hearing on the Motion, Vanguard had not filed a proof of claim in this case.[4]

On April 13, 2017, Vanguard filed its Motion.  Vanguard contends that in light of the arbitration provisions in all four Subcontractor Agreements, cause exists to grant it relief from the automatic stay to proceed with the arbitration of its claims against the Debtor and assert the right of setoff and the defense of recoupment.

The Debtor, supported by Huntington National Bank, its prepetition secured lender ("Huntington"), and Shape Corporation, one of its largest general unsecured creditors ("Shape"), filed an objection [Dkt. No. 55] (the "Objection") in which it argues that under the facts and circumstances of the case, an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code.[5]  As such, the Debtor, Huntington and Shape maintain that the court has discretion whether to enforce the arbitration provisions in the Subcontractor Agreements. The Debtor, Huntington and Shape also assert that because Vanguard has not filed a proof of claim, it would be premature to decide whether Vanguard should be allowed to effectuate setoff and/or recoupment.

The court held a hearing regarding the Motion on May 25, 2017.  At the conclusion of the hearing, the court took the matter under advisement.

### **DISCUSSION**

In its Motion, Vanguard argues that cause for relief from the automatic stay exists because its claims against the Debtor are subject to arbitration.  Vanguard also somewhat generically contends that cause exists to allow it to assert rights of setoff and/or recoupment.  Section 362 of

---

[4]      A review of the claims register as of the date of this Opinion reveals that Vanguard has yet to file a proof of claim.  However, the Debtor has not requested, and the court has not set, a bar date for filing proofs of claim.

[5]      Huntington also filed a short objection [Dkt. No. 60].

the Bankruptcy Code provides that relief from the automatic stay should be granted for "cause." 11 U.S.C. § 362(d)(1). Because "cause" is not defined in the Bankruptcy Code, courts should determine on a case by case basis whether relief from the automatic stay is appropriate. *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 737 (6th Cir. 1994) (citation omitted). One court has described "cause" as an "elastic concept," which can vary depending on the stage in the proceedings at which the relief from stay is sought. *Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.)*, 382 B.R. 90, 109 (Bankr. E.D. Mich. 2008) (citation omitted); *see also Sumitomo Trust & Banking Co. v. Grand Rapids Hotel L.P. (In re Holly's Inc.)*, 140 B.R. 643, 700 (Bank. W.D. Mich. 1992) (burden on debtor under section 362(d)(2) less stringent early in Chapter 11 case) (citation omitted). Notwithstanding this elasticity, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "Arbitration Act") is entitled to great deference when relief from the automatic stay is sought in order to enforce an agreement to arbitrate. *See In re Hermoyian*, 435 B.R. 456, 463 (Bankr. E.D. Mich. 2010) (citation omitted).

A.      *The Federal Arbitration Act and the Bankruptcy Code*

Under the Arbitration Act, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Arbitration Act represents "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

The Arbitration Act is intended to enforce private agreements to arbitrate while encouraging the "efficient and speedy resolution" of disputes. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). A court must therefore "rigorously enforce agreements to arbitrate even

if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute." *Id.*; *see* 9 U.S.C. § 3; *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (identifying factors to consider when considering whether to enforce arbitration agreement in non-bankruptcy context). This requirement is not lessened when a party subject to an arbitration agreement raises a claim based on a statutory right. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

However, "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Id.* at 226. In *McMahon*, the United States Supreme Court instructed lower courts to deduce such contrary congressional command by considering (i) the text of the statute, (ii) the statute's legislative history, or (iii) an inherent conflict between arbitration and the statute's underlying purposes. *Id.* at 227. The party opposing enforcement of an agreement to arbitrate bears the burden "to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.*

The Sixth Circuit Court of Appeals has not considered the intersection of the Arbitration Act and the Bankruptcy Code after *McMahon*. However, other circuit courts of appeal have overwhelmingly concluded that neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude enforcement of agreements to arbitrate in the context of a bankruptcy case. *See*, *e.g.*, *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1020 (9th Cir. 2012); *Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007); *Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 231 (3d Cir. 2006); *see also MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104 (2d Cir. 2006) (addressing only whether inherent conflict exists); *Phillips v.*

*Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.)*, 403 F.3d 164 (4th Cir. 2005) (same).[6]

In this case, it is clear that Vanguard and the Debtor intended to arbitrate their disputes arising under the Subcontractor Agreements.  None of the parties suggests that the Subcontractor Agreements or the arbitration provisions therein are unenforceable.  Moreover, the scope of the arbitration provisions in the Subcontractor Agreements is fairly broad, as it encompasses any and all claims of Vanguard and the Debtor under the Subcontractor Agreements (but not necessarily the Purchase Orders).  Finally, the Debtor does not contend that the Bankruptcy Code or its legislative history preclude enforcement of agreements to arbitrate.  Therefore, the sole issues before this court are whether an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code and, if so, whether the court should exercise its discretion by declining to enforce the parties' agreement to arbitrate.

### 1.      *Core v. Non-Core Distinction*

In deciding whether an inherent conflict exists and as a threshold matter, courts are required to determine whether the dispute that would be subject to arbitration is a core or non-core proceeding pursuant to 28 U.S.C. § 157(b).  *See*, *e.g.*, *In re Elec. Mach. Enters., Inc.*, 479 F.3d at 796; *Ackerman and Kuriloff v. Eber (In re Eber)*, 687 F.3d 1123, 1130 n.6 (9th Cir. 2000).[7]  Where

---

[6]      Prior to *McMahon*, the Sixth Circuit had held that a bankruptcy court could simply exercise its discretion without further constraint when considering whether to enforce an arbitration agreement.  *In re No Place Like Home, Inc.*, 559 B.R. 863, 871 (Bankr. W.D. Tenn. 2016) (citations omitted).  *McMahon* overruled such holding by requiring an inherent conflict before a court exercises its discretion.  *See id*. at 871-82.

[7]      A core proceeding is generally defined as "one that either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy."  *Bavelis v. Doukas (In re Bavelis)*, 773 F.3d 148, 156 (6th Cir. 2014) (citations omitted).  A non-core proceeding, on the other hand, is a matter that (i) is not a core proceeding under 28 U.S.C. § 157(b)(2), (ii) existed prior to the bankruptcy, (iii) would continue to exist independent of the Bankruptcy Code, and (iv) is not significantly affected by the filing of the bankruptcy case.  *Id.* (citations omitted).

the dispute is a non-core proceeding, a court is generally without discretion to preclude the enforcement of the arbitration provision and the inquiry ends. *See*, *e.g.*, *In re Elec. Mach. Enters., Inc*., 479 F.3d at 796. If, however, the dispute is a core proceeding, the court moves to the next step in the analysis - whether enforcement of such agreement would inherently conflict with the underlying purposes of the Bankruptcy Code. *See*, *e.g.*, *id*.

The Sixth Circuit Court of Appeals has held that the allowance or disallowance of claims arising under state law, like Vanguard's claims in this case, is a core proceeding under 28 U.S.C. § 157(b)(2)(B). *In re Bavelis*, 773 F.3d at 157. Other courts have similarly concluded that the allowance or disallowance of claims against a debtor's estate through arbitration is a core proceeding. *See In re Thorpe Insulation Co.*, 671 F.3d at 1021-22 (relying on 28 U.S.C. § 157(b)(2)(A) - (B)); *In re White Mountain Mining Co., L.L.C.*, 403 F.3d at 168-69 (same); *Smith-Boughan, Inc. v. SunTrust Bank* (*In re GOE Lima, LLC)*, 2009 WL 2901524, at *4 (Bankr. N.D. Ohio Sept. 1, 2009) (relying on 28 U.S.C. § 157(b)(2)(B)); *cf. In re Elec. Mach. Enters. Inc.*, 479 F.3d at 798 (state law claim by debtor against creditor was non-core).

In its Motion, Vanguard acknowledges the core nature of its claims against the Debtor's estate by quoting favorably from *Hermoyian*. *See* 435 B.R. at 464 (determination of debt owed by debtor to creditor is core proceeding). However, at the hearing on the Motion and without directing the court to any relevant authority, Vanguard suggested that the dispute might be a non-core proceeding. In light of 28 U.S.C. § 157(b)(2)(B) and Sixth Circuit precedent, this court finds such

argument without merit. *See In re Bavelis*, 773 F.3d at 157. The liquidation of Vanguard's claims

against the Debtor through arbitration would clearly be a core proceeding.[8]

### 2.   *Inherent Conflict Between Arbitration and the Bankruptcy Code*

The fact that the dispute between Vanguard and the Debtor is a core proceeding is not in

and of itself determinative. *See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims*

*Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir. 1997) (noting that not all

core proceedings will result in inherent conflict with Arbitration Act). The court must next

consider whether enforcement of the arbitration provisions in the Subcontractor Agreements

inherently conflict with the underlying purposes of the Bankruptcy Code. *See*, *e.g.*, *In re Elec.*

*Mach. Enters., Inc.*, 479 F.3d at 796. Confronted with the same question, the Second Circuit Court

of Appeals explained that:

> [E]ven as to core proceedings, the bankruptcy court will not have discretion
> to override an arbitration agreement unless it finds that the proceedings are
> based on provisions of the Bankruptcy Code that "inherently conflict" with
> the Arbitration Act or that arbitration of the claim would "necessarily
> jeopardize" the objectives of the Bankruptcy Code. *This determination*
> *requires a particularized inquiry into the nature of the claim and the facts*
> *of the specific bankruptcy. The objectives of the Bankruptcy Code relevant*
> *to this inquiry include* "the goal of centralized resolution of purely
> *bankruptcy issues, the need to protect creditors and reorganizing debtors*
> *from piecemeal litigation,* and the undisputed power of a bankruptcy court
> to enforce its own orders." If a severe conflict is found, then the court can
> properly conclude that, with respect to the particular Code provision
> involved, Congress intended to override the Arbitration Act's general policy
> favoring the enforcement of arbitration agreements.

*Hill*, 436 F.3d at 108 (emphasis added) (internal citations omitted) (quoting *McMahon*, 482 U.S.

at 227); *see also NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984) (general purpose of

---

8   The court finds it noteworthy that Vanguard has not filed a proof of claim in this case. Regardless of its reasons for not doing so, Vanguard clearly seeks to liquidate its claims in arbitration so that it can subsequently file a proof of claim and assert rights of setoff against the Debtor's estate. If Vanguard has no intention of collecting from the Debtor's estate, the court invites Vanguard to promptly renew its Motion after expressly waiving its rights to receive a distribution from the Debtor's estate and effectuate setoff.

bankruptcy is to prevent debtors from going into liquidation resulting in a loss of jobs and possible misuse of economic resources).

There is no uniformly-adopted test in order to determine whether an inherent conflict exists.  Instead, such determination should be made on a case-by-case basis, considering all of the relevant facts in a particular case.  *See Hill*, 436 F.3d at 108; *see also In re No Place Like Home, Inc.*, 559 B.R. at 877 (citations omitted) (identifying non-exclusive list of factors to consider).

In its Motion, Vanguard devotes minimal discussion to the specific facts of this case.  As its primary argument, Vanguard again relies on *Hermoyian*, this time for the proposition that forums other than bankruptcy courts frequently determine the validity and amount of a debt owed by a debtor to a creditor.  435 B.R at 465.[9]  While *Hermoyian* is well-reasoned, it is distinguishable from the facts in this case.

In *Hermoyian*, the court granted the creditor relief from the automatic stay solely to liquidate its state law claims through arbitration, but denied the creditor's request to arbitrate the remaining issues under section 523(a) and 727.  *Id*. at 467.  The court based its decision in large part on judicial economy, noting that a trial was scheduled to occur in the state court a mere five days before the debtor and the creditor agreed to arbitrate.  *Id*. at 458. The court also found persuasive the lack of prejudice to other creditors given the no-asset nature of the case, and the fairly ambitious arbitration schedule that had been established by the mediator and the parties.  *Id*. at 459-60.

---

[9]      In its Motion, Vanguard also passively cites to two other decisions which purportedly support its request for relief from the automatic stay to enforce the agreement to arbitrate.  Both decisions are distinguishable given the specific facts in this case.  *See In re Elec. Mach. Enters., Inc.*, 479 F.3d at 799 (proceeding not core, and even to extent it was, trial court failed to make sufficient findings); *Dixon v. Household Realty Corp. (In re Dixon)*, 428 B.R. 911, 916 (Bankr. N.D. Ga. 2010) (to extent debtor's Truth in Lending Act claims against mortgagee were even core, debtor failed to demonstrate inherent conflict based on specific circumstances).

After the debtor filed a motion for reconsideration, the court concluded that there was no palpable error with respect to its previous decision and reiterated that cause existed to grant relief from the automatic stay. *Id.* at 461. According to the court, although disputes under sections 523(a) and 727 are core, no conflict existed between arbitration and the underlying policy of a centralized forum for claims resolution so as to ensure an orderly distribution of assets from the estate. *Id.* at 464. In reaching this conclusion, the court emphasized "there are no claims to be resolved nor assets to be distributed in this Chapter 7 case." *Id.*

The facts in this case are much different from those in *Hermoyian*. Most importantly, *Hermoyian* involved a liquidation under Chapter 7 where there we no assets available for distribution to other creditors. Here, the Debtor seeks to reorganize through Chapter 11 and provide some form of distribution to its creditors through a plan or perhaps a sale of its assets. Other creditors therefore have a direct interest in the liquidation of Vanguard's claim, which is alleged to be close to $4 million and will likely significantly reduce the amount available for distribution to those creditors. Huntington and Shape both appeared at the hearing on the Motion and advised the court that they are inclined to participate in the claims resolution process. *See* 11 U.S.C. § 502(a) (providing party in interest, not just trustee or debtor in possession, may object to claim). In the event the arbitration is recommenced, Huntington and Shape would be denied this opportunity.

In addition, it is unclear if judicial economy would be served by enforcing the arbitration agreement. Unlike in *Hermoyian*, Vanguard and the Debtor were not on the cusp of a trial, and the arbitration had yet to commence beyond the scheduling of the initial conference. *See Bill Heard Chevrolet Corp.–Orlando v. Blau (In re Bill Heard Enters., Inc.)*, 400 B.R. 806, 813 (Bankr. N.D. Ala. 2009) (concluding arbitration should continue because, among other things, it was

pending for over seven years before bankruptcy filed); *In re Shores of Panama, Inc.*, 387 B.R. 864, 867 (Bankr. N.D. Fla. 2008) (concluding arbitration should continue because discovery commenced and preliminary matters decided in arbitration pending for more than two years). Instead, Vanguard made its arbitration demand less than a month before the Debtor filed for bankruptcy. Simply put, the arbitration proceeding was in its infancy. Moreover, because Vanguard has not come forward with a proposed arbitration schedule, the court is unable to determine if efficiency would be promoted by enforcing the agreement to arbitrate. Vanguard's reliance on *Hermoyian* is therefore misplaced given the facts and circumstances in this case.

The court is more persuaded by the arguments advanced by the Debtor. In its Objection, the Debtor maintains that enforcement of the arbitration provision would deprive the Debtor of the relief that Chapter 11 is intended to provide, including modification of rights between debtors and creditors by centralizing disputes in the bankruptcy court. The Debtor asserts that it desperately needs a respite from the dispute with Vanguard in order to avoid immediate liquidation. The Debtor points to its limited resources, including the cash necessary to fund the arbitration which is subject to an agreement with Huntington for the use of cash collateral. Finally, the Debtor emphasizes that at least two creditors, and perhaps even the Official Committee of Unsecured Creditors (the "Committee"), should be afforded an opportunity to participate in the claims resolution process.[10]

The Debtor directs this court to *White Mountain Mining Co., L.L.C.*, where the Fourth Circuit Court of Appeals affirmed the lower courts' decisions that an inherent conflict existed between arbitration and bankruptcy. 403 F.3d at 164. Noting that centralization of disputes

---

[10] The Debtor's argument regarding participation from the Committee is somewhat dubious. Although the Committee has been formed [Dkt. No. 30], it has yet to take any formal action in this case, including the retention of legal counsel.

between debtors and creditors is particularly critical in Chapter 11 cases, the Fourth Circuit concluded that the bankruptcy court's decision was not clearly erroneous when it found, among other things, that arbitration (i) would make it difficult for the debtor to attract additional funding, (ii) would undermine creditor confidence in the debtor's ability to reorganize, (iii) would undermine confidence of third persons conducting business with the debtor, and (iv) impose additional costs on the estate while diverting the attention of the debtor's management, even though the debtor was not a named party in the arbitration. *Id*. at 170.

This court agrees with the reasoning in *White Mountain Mining Co.* at this stage of the Debtor's case. One of the underlying purposes of bankruptcy is to provide the debtor with a breathing spell during which it can develop a strategy for its exit from bankruptcy. *See Bildisco*, 465 U.S. at 532; *Md. v. Port Admin. v. Premier Auto. Servs., Inc. (In re Premier Auto. Servs., Inc.)*, 492 F.3d 274, 284 (6th Cir. 2007) (citation omitted). At the hearing on the Motion, the Debtor advised the court that it anticipated filing a plan of reorganization. The Debtor further noted that recommencement of the arbitration, including the assertion of setoff rights against Huntington's collateral, would interfere with its efforts to execute a rehabilitation strategy. *Cf. In re GOE Lima, LLC*, 2009 WL 2901524, at \*4 (debtor failed to demonstrate that arbitration would seriously interfere with reorganization efforts under proposed plan). Because this case is less than four months old, the court agrees that the Debtor should be given a reasonable period of time to propose a plan or market its assets for sale without simultaneously having to devote significant time and resources towards arbitration with Vanguard.

Finally, the court notes that granting relief from the automatic stay to allow arbitration might result in piecemeal litigation. *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 821 F.3d 1146, 1150 (9th Cir. 2016). Although the Subcontractor Agreements require arbitration of any disputes

arising thereunder, Vanguard is also seeking to arbitrate its claims against the Debtor for breach of the Purchase Orders, under which Vanguard claims separate damages. The Purchase Orders were not attached to the Motion, and at the hearing Vanguard was unable to definitively state whether they contain an arbitration provision or somehow incorporate the terms of the Subcontractor Agreements. Without more, a possibility exists that the Debtor would be forced to unnecessarily expend time and resources by having to litigate in two forums.

For the foregoing reasons, the court finds that an inherent conflict exists between arbitration and the underlying purposes of Chapter 11. The court shall therefore exercise its discretion by denying without prejudice Vanguard's request to enforce the parties' agreement to arbitrate.[11]

### B.        Exercise of Right of Setoff and/or Defense of Recoupment

In its Motion, Vanguard also seeks relief from the automatic stay in order to exercise its right of setoff and assert the defense of recoupment. The right to setoff permits persons that owe money to one another to apply their mutual debts against one another. *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 290 (6th Cir. 2001) (citing *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995)). Although the Bankruptcy Code does not provide a federal right to setoff, section 553 generally preserves the rights that arise under applicable non-bankruptcy law. *See id.* To establish a right of setoff, the party must show, among other things, that there are mutual obligations owed between the parties. *Ky. Cent. Ins. Co. v. Brown (In re Larbar Corp.)*, 177 F.3d 439, 445-47 (6th Cir. 1999).

---

[11]        The Debtor's breathing spell is by no means infinite. According to the docket, the Debtor has done very little in this case to date. For example, the Debtor has not filed a motion to set a bar date, which is often viewed as a prerequisite to the filing of a plan. Nor has the Debtor retained an investment banker to explore any potential sale. As time passes, Vanguard's request for relief from the automatic stay to recommence the arbitration will become more compelling to the court. *See In re Plastech Engineered Prods., Inc.*, 382 B.R. at 111. While the Debtor is afforded time to develop a rehabilitation strategy, it cannot hide in bankruptcy forever.

If a party meets the requirements of section 553, the presumption is in favor of setoff, but the court has discretion to deny a setoff where setoff might prejudice third parties. *Id.* at 447.

Vanguard provides minimal discussion as to why setoff is appropriate. Instead, it generically states that "[t]here is no reason why Vanguard should not be granted relief from the automatic stay to exercise its rights to setoff in this case." The court finds Vanguard's request for setoff to be deficient. The Motion lacks any explanation as to how Vanguard satisfies the right of setoff under applicable non-bankruptcy law. *See* Fed. R. Bankr. P. 9013 (motion required to state grounds for relief with particularity); *see also In re Sharif*, 564 B.R. 328, 367 (Bankr. N.D. Ill. 2017) (court should not have to hunt for basis for relief requested). Moreover, as the Debtor and Huntington stress, Vanguard's claims are currently disputed and unliquidated. Finally, the Motion is less than clear regarding the effect of setoff on Huntington's collateral. As such, the court declines to grant relief from the automatic stay at this time to allow Vanguard to exercise its alleged right of setoff.

Unlike setoff, recoupment is in the nature of a defense to a claim. *Malinowski v. N.Y. State Dept. of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir. 1998) (citations omitted). Recoupment permits a party to reduce the amount of the other party's claim to the extent that it has a valid defense arising out of the same transaction or same series of transactions. *See*, *e.g.*, *In re Reeves*, 265 B.R. 766, 769-70 (Bankr. N.D. Ohio 2001). Unlike setoff, recoupment does not require the existence of mutual debts. *In re Gaither*, 200 B.R. 847, 850 (Bankr. S.D. Ohio 1996) (collecting authorities).

Vanguard cites to general legal principles and conclusively states that recoupment is appropriate because its claims arise out of the same contract or a series of integrated contracts. Vanguard offers nothing more. Although Vanguard may use the defense of recoupment without

authorization from the court, Vanguard has expressly requested it in the Motion.  *See In re Delicruz*, 300 B.R. 669, 679-80 (Bankr. E.D. Mich. 2003).  To the extent Vanguard desires court approval before raising the defense of recoupment, the court finds such request to be premature. The Debtor has yet to assert any claims against Vanguard in this case.  In addition, Vanguard has not provided any detail as to why its claims arise out of the same contracts or a series of integrated contracts.  Presumably, there is a basis.  However, without a more detailed explanation, such relief is inappropriate, to the extent it is even necessary.  For those reasons, the court shall deny the Motion as it pertains to recoupment.

## CONCLUSION

Based on the specific facts and circumstances of this recently filed Chapter 11 case, the court concludes that an inherent conflict exists between arbitration and the underlying purposes of bankruptcy.  The Debtor has satisfied its burden, at least for the time being, that arbitration at this stage of the case would circumvent the objectives of Chapter 11.  Moreover, Vanguard has not sufficiently pled its requests to exercise setoff and/or recoupment.  The Motion is therefore denied without prejudice.  The court shall enter a separate order consistent with this Opinion.

**Signed: June 26, 2017**





John T. Gregg
United States Bankruptcy Judge